UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| SHARON R.,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  No. 1:22-cv-938-TWP-MJD |
| | ) |
| KILOLO KIJAKAZI, Acting Commissioner of the Social Security Administration, | ) ) |
| | ) |
| Defendant. | ) |

**REPORT AND RECOMMENDATION**

Claimant Sharon R. requests judicial review of the final decision of the Acting Commissioner of the Social Security Administration ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act") and Supplemental Security Income ("SSI") under Title XVI of the Act. *See* 42 U.S.C. § 423(d), 42 U.S.C. § 1382, et seq. Chief Judge Tanya Walton Pratt has designated the undersigned Magistrate Judge to issue a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). [Dkt. 15.] For the reasons set forth below, the Magistrate Judge **RECOMMENDS** that the Court **REVERSE** and **REMAND** the decision of the Commissioner.

---

[1] To protect the privacy interests of claimants for Social Security benefits, and consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States Courts, the Southern District of Indiana has opted to use only the first names and last initials of non-governmental parties in its Social Security judicial review opinions.

## I. Background

Claimant applied for DIB and SSI in April 2020, alleging an onset of disability as of January 1, 2000.  *See* [Dkt. 10-2 at 16].  Claimant's application was denied initially and upon reconsideration, and a hearing was held before Administrative Law Judge John Martin ("ALJ") on September 10, 2021.  [Dkt. 10-2 at 33.]  On October 6, 2021, ALJ Martin issued his determination that Claimant was not disabled.  *Id.* at 16.  The Appeals Council then denied Claimant's request for review on March 10, 2022.  *Id.* at 2.  Claimant timely filed her Complaint on May 13, 2022, seeking judicial review of the ALJ's decision.  [Dkt. 1.]

## II. Legal Standards

To be eligible for benefits, a claimant must have a disability pursuant to 42 U.S.C. § 423.[2]  Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  To determine whether a claimant is disabled, the Commissioner, as represented by the ALJ, employs a sequential, five-step analysis: (1) if the claimant is engaged in substantial gainful activity, she is not disabled; (2) if the claimant does not have a "severe" impairment, one that significantly limits her ability to perform basic work activities, she is not disabled; (3) if the claimant's impairment or combination of impairments meets or medically equals any impairment appearing in the Listing of Impairments, 20 C.F.R. pt.

---

[2] DIB and SSI claims are governed by separate statutes and regulations that are materially identical in all respects relevant to this case.  For the sake of simplicity, this Report and Recommendation contains citations to those that apply to DIB.

2

404, subpart P, App. 1, the claimant is disabled; (4) if the claimant is not found to be disabled at step three, and is able to perform her past relevant work, she is not disabled; and (5) if the claimant is not found to be disabled at step three, cannot perform her past relevant work, but can perform certain other available work, she is not disabled. 20 C.F.R. § 404.1520. Before continuing to step four, the ALJ must assess the claimant's residual functional capacity ("RFC") by "incorporat[ing] all of the claimant's limitations supported by the medical record." *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019).

In reviewing Claimant's appeal, the Court will reverse only "if the ALJ based the denial of benefits on incorrect legal standards or less than substantial evidence." *Martin v. Saul*, 950 F.3d 369, 373 (7th Cir. 2020). Thus, an ALJ's decision "will be upheld if supported by substantial evidence," which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Jozefyk v. Berryhill*, 923 F.3d 492, 496 (7th Cir. 2019).

An ALJ need not address every piece of evidence but must provide a "logical bridge" between the evidence and his conclusions. *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015). This Court may not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for that of the ALJ. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). Where substantial evidence supports the ALJ's disability determination, the Court must affirm the decision even if "reasonable minds could differ" on whether Claimant is disabled. *Id.*

### III. ALJ Decision

The ALJ first determined that Claimant had not engaged in substantial gainful activity since 2005, which was after the alleged onset date of January 1, 2000. [Dkt. 10-2 at 18.] The ALJ continued to address the continuous twelve-month periods during which Claimant did not engage in substantial gainful activity. At step two, the ALJ found that Claimant had the

following severe impairments: "low vision, peripheral neuropathy, chronic kidney disease (CKD), obesity, depression and anxiety." *Id*. at 19. At step three, the ALJ found that Claimant's impairments did not meet or equal a listed impairment during the relevant time period. *Id*. The ALJ then found that, during the relevant time period, Claimant had the residual functional capacity ("RFC")

> to perform a range of sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a). [Claimant] can frequently operate foot controls with either foot. She could not climb ladders, ropes or scaffolds. She could occasionally climb ramps and stairs. She could balance, stoop, kneel, crouch and crawl occasionally. She could read ordinary newspaper or book print. She could not work at unprotected heights or around moving mechanical parts. [Claimant] must avoid concentrated exposure to humidity and wetness, dust, odors, fumes and pulmonary irritants, to extreme cold, and extreme heat. [Claimant] could perform simple, routine and repetitive tasks but not at a production rate pace (e.g. assembly line work). [Claimant] could interact appropriately with supervisors frequently. She could occasionally interact appropriately with coworkers and the public.

*Id.* at 21.

At step four, the ALJ found that Claimant was not able to perform her past relevant work. *Id*. at 26. At step five, the ALJ, relying on testimony from a vocational expert ("VE"), determined that Claimant was able to perform jobs that exist in significant numbers in the national economy, such as document preparer, parimutuel ticket taker, and addresser. *Id*. at 27. Accordingly, the ALJ concluded that Claimant had not been disabled at any time from January 1, 2000, through the date of his decision. *Id.*

## IV. Discussion

Claimant raises numerous issues in her brief. Each of the issues will be addressed, as appropriate, below.

### A. ALJ's Consideration of Claimant's Subjective Symptoms

Claimant alleges that the symptoms caused by her impairments render her disabled. The ALJ recognized this fact, summarizing Claimant's allegations about her subjective symptoms as follows:

> The claimant testified that she is unable to work due to nerve damage in her legs that limits her ability to stand and walk for long periods. She stated that she has numbness on the bottom of her feet and toes. The claimant testified that she has daily headaches and will have around three debilitating migraines a month. The claimant stated that she recently tried working as a cashier and bagger at a grocery store but could not continue due to problems standing and walking. The claimant testified that sometimes she can walk for one hour at a time but will have days where it hurts to walk at all. She stated that she takes a number of medications for her nerve pain in the legs, migraines, anxiety, high blood pressure, high cholesterol, thyroid problems, and asthma. She stated that medication side effects include dizziness and headaches. The claimant testified that her medications help, but her doctors have increased the dosages of some medications. The claimant stated that she has Stage 3 kidney disease that can cause extreme fatigue and nausea. The claimant testified that she does not need a cane to walk but must use the railing when going up stairs. She can drive but is worried about getting muscle spasms in her legs when driving. The claimant testified that she could perform household chores but has days when she struggles to perform daily activities due to her pain. She stated that she is 5'5" and weighs 355 pounds. In her adult function report, the claimant wrote that her diabetic retinopathy limits her ability to lift and to see, her migraines affect her ability to concentrate and complete tasks, and has limits in her ability to walk. (Exhibit 5E)

[Dkt. 10-2 at 22.]

In his decision, the ALJ also recognized his obligation to evaluate Claimant's subjective symptoms pursuant to 20 C.F.R. § 404.1520c and SSR 16-3p. *Id.* at 21. SSR 16-3p describes a two-step process for evaluating a claimant's subjective symptoms. First, the ALJ must determine whether the claimant has a medically determinable impairment that could reasonably be expected to produce the individual's alleged symptoms. SSR 16-3p, 2017 WL 5180304, at *3 (Oct. 25, 2017). Second, the ALJ must evaluate the intensity and persistence of a claimant's symptoms, such as pain, and determine the extent to which they limit her ability to perform work-related

activities. *Id.* at *3-4. At this step, the ALJ considers the claimant's subjective symptom allegations in light of the claimant's daily activities; the location, duration, frequency, and intensity of pain and limiting effects of other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of medication; treatment other than medication for relief of pain; and other measures taken to relieve pain. 20 C.F.R. § 416.929(c)(3). When assessing a claimant's subjective symptoms, ALJs are directed to "consider the consistency of the individuals own statements. To do so, [they] will compare statements an individual makes in connection with the individual's claim for disability benefits with any existing statements the individual made under other circumstances." SSR 16-3p, 2017 WL 5180304, at *8. The ruling also explains that "[p]ersistent attempts to obtain relief of symptoms, such as increasing dosages and changing medications, trying a variety of treatments, referrals to specialists, or changing treatment sources may be an indication that an individual's symptoms are a source of distress and may show that they are intense and persistent." *Id.* at *9.

> In this case, the ALJ concluded that
>
> claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

[Dkt. 10-2 at 22.] With regard to Claimant's main symptom, nerve pain in her legs caused by diabetic neuropathy, the ALJ noted the following:

> Concerning the claimant's diabetes, the record indicates some limitations from diabetic neuropathy in her legs. However, physical examinations have often noted stable findings, and the claimant appears able to perform activities of daily living independently. The claimant has a remote alleged onset date in 2000, but consistent medical treatment in the record appears to begin around 2019. She also appeared to work at substantial gainful activity levels in 2005. There is limited medical evidence to evaluate the claimant's functional limitations at the time

6

> around her remote alleged onset date. In March 2019, a physical examination noted that the claimant had abnormally thick calluses on her heels, but otherwise had mostly normal findings (Exhibit 2F/16). In May 2019, the claimant stated that she is moving and felt stressed as she had to perform minor work to fix her home to prepare the home for sale. She stated that her diabetic leg ulcer was better, and a physical examination noted some dry flaky skin in the left and right foot (Exhibit 3F/31). Imaging of her chest in August 2019 noted calcified plaques in the coronary arteries (Exhibit 12F/32). Findings of some diabetic ulcers in the feet along with diabetic small vessel disease indicate some work limitations. However, the claimant was able to make home repairs and examiners did not note that the claimant had limitations with walking.

[Dkt. 10-2 at 22.] The ALJ's finding that "the claimant was able to make home repairs" is not supported by the record. The doctor's note states that Claimant "says she is stressed as she is moving. She says they were supposed to close tomorrow but minor work has to be done to the home before they can get the house sold." [Dkt. 10-7 at 125.] There is absolutely no indication that Claimant performed any of the work herself, and it was error for the ALJ to assume that she did and to use that assumption as a basis for discrediting Claimant.[3]

The ALJ next discussed the findings from the consultative examination that Claimant underwent in September 2020. The ALJ noted the following:

> Consultative examination findings also indicate that the claimant has the ability to perform daily activities despite her diabetes. In a September 2020 consultative examination with Wallace Gasiewicz, MD, the claimant stated that she has had diabetes for 20 years, had numbness in her feet for 5 years, and sometimes has leg swelling. Upon physical examination, the claimant stated that she had no sensation to light touch in her toes. However, Dr. Gasiewicz noted that the claimant had normal gait and posture, could climb on and off the examination table and was able to sit and lie down on the table without difficulty, had good range of motion in the joints and spine, and did not have inflammation or effusion of any joint (Exhibit 7F/3-4). Dr. Gasiewicz also noted that the claimant had

---

[3] The undersigned recognizes that, despite spending almost eight pages discussing the ALJ's subjective symptom evaluation in her brief, Claimant does not raise this error. While this could be treated as a forfeiture of the error, the undersigned is unwilling to ignore such a glaring misstatement of the record.

>   normal muscle and grip strength, can stand on her heels and toes, and had normal sensation.

*Id.* at 22-23.  In fact, Dr. Gasiewicz did not find that Claimant had "normal sensation"; his note states that she had "no sensation to light touch of toes bilat." [Dkt. 10-7 at 226.]

The Court's review of an ALJ's credibility determination is generally deferential unless "if, after examining the ALJ's reasons for discrediting testimony, we conclude that the finding is patently wrong." *Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010).  The ALJ's determination may be patently wrong where he fails to "'build an accurate and logical bridge between the evidence and the result.'" *Ribaudo v. Barnhart*, 458 F.3d 580, 584 (7th Cir. 2006) (quoting *Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2000)).  The ALJ must justify his subjective symptom evaluation with "specific reasons supported by the record," *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013), and build an "accurate and logical bridge between the evidence and conclusion." *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009).  Simply put, an ALJ "must competently explain an adverse-credibility finding with specific reasons 'supported by the record.'" *Engstrand v. Colvin*, 788 F.3d 655, 660 (7th Cir. 2015) (quoting *Minnick v. Colvin*, 775 F.3d 929, 937 (7th Cir. 2015)).  The ALJ failed to do so in this case because he relied on two misstatements of the record as support for his conclusion that Claimant's subjective symptom allegations were not fully credible.  While it is possible the ALJ might have drawn the same conclusion without considering these misstatements of the record, the undersigned cannot say with great confidence that he would have done so.  *See McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011) (error does not require remand "if we can predict with great confidence what the result on remand will be").  Accordingly, remand is required for the ALJ to reevaluate his subjective symptom evaluation based on an accurate reading of the record.

### B. ALJ's Assessment of Medical Opinions

The record contains several medical opinions regarding Claimant's abilities: two from state agency physicians who reviewed Claimant's medical records but did not examine her; one from Thomas A. Smith, Ph.D., who conducted a mental status examination; and one from her treating nurse practitioner, Megan Richards.[4] Because Claimant advanced this claim after March 27, 2017, the applicable law no longer required the ALJ to give special weight to the opinion of Claimant's treating physician. *See* 20 C.F.R. § 404.1520c(a). Rather, the ALJ was required to evaluate all medical opinions on an equal basis for "persuasiveness." *Id.* ALJs are instructed to evaluate all medical opinions using factors including whether the opinion is supported by objective medical evidence; the opinion's consistency with other evidence; the professional's relationship with the patient, including the length, frequency, purpose, and extent of treatment; and the professional's specialization. 20 C.F.R. § 404.1520c(c). In addition, the regulation expressly recognizes that "[a] medical source may have a better understanding of your impairment(s) if he or she examines you than if the medical source only reviews evidence in your folder." 20 C.F.R. § 404.1520c(c)(3)(v). After considering the relevant factors, an ALJ must articulate how persuasive he finds each medical opinion in his decision. 20 C.F.R. § 404.1520c(b). The most important factors ALJs will use in determining the persuasiveness of a medical opinion are supportability and consistency. 20 C.F.R. § 404.1520c(b)(2). Opinions that are supported by and consistent with objective medical evidence will be most persuasive. 20 C.F.R. § 404.1520c(c)(1)-(2).

---

[4]Dr. Wallace Gasiewicz performed a consultative physical examination of Claimant; however, he did not opine as to her abilities.

> The ALJ found the following with regard to the two state agency physicians' opinions:
>
> In September 2020, at the initial determination level, State agency medical consultant M. Brill, M.D., opined that that [sic] [Claimant] could lift/carry up to 20 pounds occasionally. She could stand/walk for four hours during an eight-hour workday. Thus, Dr. Brill limited [Claimant] to a range of sedentary work. (Exhibit 1A; 2A; 3A; 4A). Dr. Brill opined that [Claimant] had limited near and far acuity. He recommended that [Claimant] avoid concentrated exposure to wetness, vibration, and hazards. In February 2021, at the reconsideration level, State agency medical consultant J.V. Corcoran, M.D., affirmed Dr. Brill's opinion Exhibit 9A; 10A). I found these opinions persuasive and consistent with record evidence that revealed that although [Claimant] needed treatment for a number of conditions, doctors generally described her as doing well and they described her conditions as stable. I found this opinion consistent with the results of Dr. Gasiewicz's consultative examination findings that [Claimant] walked with a normal gait and posture, had good range of motion in her joints and spine, had normal muscle and grip strength, could stand on her heels and toes, and had had [sic] normal sensation (Exhibit 7F). The opinion is consistent with findings of stable vision and with evidence that showed that medications could [Claimant] [sic] control her [chronic kidney disease]. I found this opinion consistent with reports about [Claimant's] activities of daily living that showed she helped with household chores and that she drove an automobile.

[Dkt. 10-2 at 25.] Obviously, this analysis repeats the ALJ's misstatement that Dr. Gasiewicz found that the Claimant had "normal sensation." In addition, the ALJ offers no record citations for the statement that her doctors "generally described her as doing well," and the Court's review of the record as a whole does not find support for that statement. Elsewhere in his opinion, the ALJ noted that "[n]ephrology treatment notes indicated that [Claimant] was doing well overall with medications (Exhibit 6F/2; 11F/7)." Exhibit 11F/7, [Dkt. 10-7 at 260], is not a nephrology note, but rather a note from a visit with Claimant's family medicine doctor, and it does not state that Claimant was doing well. In the other cited exhibit, the nurse practitioner who saw Claimant for a nephrology follow-up noted that Claimant was "doing well overall," *id.* at 215, but in context it appears that this refers to her kidney disease, not all of her other medical issues. This is the only medical record the ALJ cites in his opinion that states that Claimant is "doing well."

The ALJ's reasons for finding the state agency doctors' opinions persuasive are thus not supported by substantial evidence.

> The ALJ evaluated the opinions of the psychological consultative examiner as follows:
>
> In October 2020, consultative examiner Thomas Smith, Ph.D., opined that the claimant's generalized anxiety disorder and the panic disorder make it difficult for her to be in situations in which there are large groups of people, and it also makes it difficult for her to focus on things and finish things (Exhibit 8F). I find this opinion somewhat persuasive. Dr. Smith performed a direct examination of [Claimant] and he supported his opinion with clinical observations that [Claimant] seemed to have a flat affect. However, I found that [Claimant] had a mild limitation in interacting with others based on Dr. Smith's observations described [Claimant] as cooperative. In April 2020, Ms. Amlin noted that [Claimant] had a normal mood and affect and Ms. Amlin rated [Claimant's] judgment and thought content as normal (14F/36). When discharged from her COVID admission in January 2021, Ian S. Scharrer, M.D., described [Claimant] as alert, oriented and conversant. Dr. Sharrer [sic] opined that [Claimant's] mood and judgment seemed appropriate 13F/9).

[Dkt. 10-2 at 25.] As Claimant notes in her brief, Dr. Smith's clinical observation was not simply that Claimant had a flat affect; Dr. Smith actually observed the following:

> [Claimant] appeared sad with flat affect, sad eyes, tears in her eyes, slow movement, slow talk, and self[-]criticism. She also appeared rather lethargic. She was not obviously anxious during the session.

[Dkt. 10-7 at 234.] Further, while it is not entirely clear, it appears that the ALJ found Dr. Smith's conclusion about Claimant's ability to deal with large groups of people to be only "partially persuasive" because Dr. Smith found Claimant to be "cooperative" during her one-on-one exam with him. Obviously, if that is, in fact, what the ALJ means, that is nonsensical. It is also not entirely clear what the ALJ meant by his references to the observations of Ms. Amlin and Dr. Scharrer. Dr. Scharrer's observations—made when Claimant was being discharged after being hospitalized for several days with COVID-19—in no way contradicts Dr. Smith's observations. With regard to Ms. Amlin's note, it is not at all clear that it actually reflects her

11

observation of Claimant during the appointment.  It appears in the section titled "Physical Exam," but the visit in question was a video visit (due to the pandemic), *see* [Dkt. 10-9 at 33], and therefore it is unlikely that any physical exam actually took place.  Indeed, the visit in question was for the purpose of discussing an abnormal lab result with Claimant; frankly, it is likely that Ms. Amlin simply clicked through the physical exam section of the electronic medical file because it was not possible (or necessary for the purpose of the visit) for her to accurately complete it.  If the ALJ concluded that Ms. Amlin's note regarding Claimant's affect during that video appointment was more reliable than the observations made by Dr. Smith, a psychologist, during a mental status examination, he should have explained the reasons for that conclusion.

Finally, the ALJ stated the following regarding the opinion of Claimant's treating nurse practitioner, Megan Richards:

> In August 2021, Megan Richards, NP-C, opined that [Claimant] could sit for four hours, stand for two hours and walk for two hours during an eight-hour workday (Exhibit 15F).  Ms. Richards identified reaching and manipulative limitations.  She opined that [Claimant] could occasionally climb ramps and stair [sic], but that she could not perform other postural activities.  Ms. Richards identified a high degree of environmental limitations.  She opined that [Claimant] would miss more than four days per month; and/or that she would need off task time of 25% of her workday.  The representative brief submitted prior to the hearing emphasized the opinion of Ms. Richards (Exhibit 12E).  I did not find this opinion persuasive.  Ms. Richards does not cite objective medical findings to support the need for multiple absences and the need to be off task.  The opinion that the claimant will miss work and be off-task is also not consistent with consultative examination findings that the claimant had normal gait and station and normal ranges of motion in her joints and spine.  I found this opinion inconsistent with [Claimant's] ability to drive, to perform activities of daily living independently and to help take care of her niece's children.

[Dkt. 10-2 at 25-26.]  The Court is unable to follow the ALJ's reasoning in this paragraph.  Ms. Richards' opinion is that Claimant would be unable to maintain concentration for more than six hours of an eight-hour work day due to "multiple comorbidities, including debilitating migraines,

proliferative diabetic retinopathy, diabetes, and leukocytoclastic vasculitis that may make it difficult for her to sustain employment." [Dkt. 10-9 at 52.] Nothing about driving, performing the daily activities described by Claimant,[5] or helping to care for children[6] is inconsistent with this opinion; nor are findings of a normal gait and ranges of motion.  Further, it is not clear what type of objective findings the ALJ would expect to support this opinion, beyond the diagnoses and various findings contained in Claimant's medical records.

The ALJ failed to properly articulate and support his reasons for finding some medical opinions more persuasive than others.  This must be corrected on remand.  In addition, after reevaluating the medical opinions as they relate to Claimant's mental limitations, the ALJ should take care to explain how his RFC accounts for each of the mental limitations the ALJ finds.  *See Lothridge v. Saul*, 984 F.3d 1227, 1233 (7th Cir. 2021) (While an "ALJ need not use any 'magic words' in formulating a person's residual functional capacity[,] . . . an RFC assessment must incorporate all of the claimant's limitations supported by the medical record, including even moderate limitations in concentration, persistence, or pace.") (citations and internal quotation marks omitted).

### C.  Claimant's Remaining Arguments

Claimant makes several additional arguments, none of which require extensive discussion.

---

[5] The only activities of daily living noted by the ALJ are that the Claimant "helped with household chores and . . . drove an automobile." [Dkt. 10-2 at 25.] Claimant testified that "a lot of days [chores] are even struggles.  I mean, I get them done, but it takes a lot longer than it should" because she had to take frequent breaks. *Id.* at 44-46.

[6] Claimant reported to Dr. Smith that she lived with her niece and her niece's family, and that when her niece and her family were home, she "tr[ied] to help them take care of the kids.  Give them a break." [Dkt. 10-7 at 235.]

13

First, Claimant argues that the ALJ's RFC determination and his finding at Step Five are not supported by substantial evidence. Both of these arguments flow from the errors identified and discussed above. Because the ALJ is required to reevaluate his subjective symptom evaluation and consideration of the medical opinions of record on remand, the ALJ will necessarily also have to reconsider his RFC determination and his Step Five finding.[7]

Claimant also argues that the ALJ failed adequately to address the effects of Claimant's morbid obesity on her RFC. The ALJ noted the following:

> It is possible that obesity has compounded [Claimant's] impairments. There are no Listing criteria in Appendix 1 specific to the evaluation of obesity. However, SSR 19-2p requires consideration of obesity in determining whether a claimant has medically determinable impairments that are severe, whether those impairments meet or equal any listing and finally in determining the claimant's residual functional capacity (RFC). Obesity may have an adverse impact upon co-existing impairments. In addition, obesity may limit an individual's ability to sustain activity on a regular and continuing basis during an eight-hour day, five-day week or equivalent schedule. I considered these factors at the remaining steps of the sequential analysis.

[Dkt. 10-2 at 19-20.] The only other mention of Claimant's obesity in the ALJ's decision is the following sentence: "[Claimant] is morbidly obese, and that is one of the reasons I have found her capable only of a range of sedentary work." *Id.* at 24. The Court agrees that, on remand, the ALJ should take care to do more than acknowledge his obligation to consider the effects of Claimant's obesity; rather, he should articulate his actual findings with regard to that issue.

---

[7] To the extent that Claimant argues that remand is required because the ALJ did not set forth a function-by-function analysis in his decision, that argument fails because Claimant does not identify any particular function that the ALJ did not address. *See Jeske v. Saul*, 955 F.3d 583, 596 (7th Cir. 2020) ("The lack of an explicit finding does not necessarily prevent us from concluding that the ALJ appropriately considered a function."); *Draper v. Martin*, 664 F.3d 1110, 1114 (7th Cir. 2011) ("It is not this court's responsibility to research and construct the parties' arguments.").

## V. Conclusion

For the reasons stated above, the undersigned **RECOMMENDS** that the Commissioner's decision be **REVERSED** and **REMANDED for further proceedings consistent with this Report and Recommendation**.

Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), and failure to timely file objections within fourteen days after service shall constitute a waiver of subsequent review absent a showing of good cause for such failure.

SO ORDERED.

Dated:  22 MAY 2023

_____
Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Service will be made electronically on all
ECF-registered counsel of record via email
generated by the Court's ECF system.